INDEPENDENT RADIONIC WORKERS OF AMERICA, ET AL., PLAINTIFFS *v.* UNITED STATES, ET AL., DEFENDANTS

Consolidated Court No. 86–12–01551

(Dated March 15, 1995)

*Collier, Shannon, Rill & Scott (Paul D. Cullen, Jeffrey S. Beckington* and *Mary T. Staley)* for plaintiffs Independent Radionic Workers of America; the International Brotherhood of Electrical Workers; the International Union of Electronic, Electrical, Technical, Salaried and Machine Workers (AFL-CIO); and the Industrial Union Department (AFL-CIO).

*Frederick L. Ikenson, P.C. (Frederick L. Ikenson* and *Larry Hampel)* for plaintiff-intervenor Zenith Electronics Corporation.

*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Velta A. Melnbrencis), Priya Alagiri,* Attorney Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. (Sukhan Kim, Warren E. Connelly, P.C.* and *Margaret L.H. Png)* for defendant-intervenors Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

## OPINION

RESTANI, *Judge:* This matter is before the court following a remand order. *See Independent Radionic Workers v. United States,* 862 F. Supp. 422 (Ct. Int'l Trade 1994).

For the reasons set forth in *Zenith Elecs. Corp. v. United States,* Slip Op. 95–35 (Mar. 9, 1995) and *Zenith Elecs. Corp. v. United States,* Slip Op. 95–38 (Mar. 13, 1995), all challenges to the remand determination concerning the VAT adjustment to USP are rejected; requests for correction of long-standing "clerical errors" are rejected; and challenges to the credit rebate expense deduction are rejected.

In its remand order, the court also directed Commerce to determine whether certain of Samsung's sales were purchase price (PP) or exporter sales price (ESP) transactions. After applying the judicially approved test, Commerce determined that the sales at issue were PP transactions.

To qualify for PP treatment (1) the manufacturer must ship the merchandise directly to the unrelated buyer, without introducing it into the related selling agent's inventory; (2) this procedure must be the customary sales channel between the parties; and (3) the related selling agent located in the United States must act only as a processor of documentation and a communication link with the unrelated buyer. *Borusan Holding A.S. v. United States,* 16 CIT 278, 281 (1992). A ruling on the first two factors is supported by the record. As for the third factor, the evidence is not as clear. Samsung America processed purchase orders, performed invoicing, collected payments, arranged U.S. transportation and was the importer of record. These duties, while substantial, are not necessarily disqualifying. *See E.I. DuPont de Nemours & Co. v. United States,* 841 F. Supp. 1237, 1248–50 (Ct. Int'l Trade 1993) (finding similar

activities did not require ESP treatment); *Outokumpu Copper Rolled Prods. AB v. United States,* 829 F. Supp. 1371, 1378–80 (Ct. Int'l Trade 1993) (stating "ministerial" activities did not require ESP treatment); *Zenith Elecs. Corp. v. United States,* Slip Op. 94–146, at 10–11 (Ct. Int'l Trade Sept. 19, 1994) (holding role as importer of record not disqualifying factor for PP treatment).

Based on the record as a whole, the court finds supported Commerce's conclusion that the subsidiary was simply a conduit performing ministerial duties as to the sales at issue. Further, the investigation made by Commerce does not appear so deficient that it must be reopened. Additionally, plaintiffs' claims that an additional selling expense adjustment need be made for these sales are outside the scope of the remand.

In its original motion Samsung challenged Commerce's decision to treat home market forwarding expenses as indirect, rather than direct, selling expenses. In connection with this issue, the court suggested to Commerce that it reexamine its entire approach to the direct versus indirect expense dichotomy because of conflicts among reviews treating the same types of expenses and among various types of expenses within the same review. In addition to the fluctuating legal standard, the evidence regarding forwarding expenses was particularly inconclusive. Commerce addressed both the broad issue and the narrow problem immediately before the court.

Commerce commenced its analysis with the proposition that circumstances of sales adjustments under 19 U.S.C. § 1677b(a)(4) (1988) are limited to those "which bear a direct relationship to the sales compared." 19 C.F.R. § 353.56(a)(1) (1994). Phrased in other language, direct sales expense treatment is only permitted for those expenses having a direct impact on prices. To determine if such an impact exists, Commerce first looks at a fixed versus variable criterion. Second, it looks at the link between the variable expenses and the subject merchandise. According to Commerce, fixed expenses are not the result of any particular sales and do not relate directly to sales of the merchandise at issue. Commerce asserts it will consider evidence outside this framework as well, in order to determine whether specific expenses are directly related to particular sales.

Turning to the forwarding charges at issue, the charges are for the hourly wages of warehouse employees. The court agrees with Commerce that whether the workers are on salary or paid by the hour is nondeterminative. It is a very unusual warehouse worker who would not be paid by the hour.

To qualify for direct treatment, Commerce would require the workers to be paid by the piece, i.e., per television loaded. Without deciding whether Commerce has finally come to grips with this overall issue or whether the piece-work test is the answer, the court concludes, on further reflection, that for this particular expense Samsung has not demonstrated that it is entitled to a direct expense adjustment. The party

claiming an adjustment bears the burden of establishing it to Commerce's satisfaction. 19 C.F.R. § 353.54 (1994).

If one sells televisions, one must have workers to forward them. This does not seem much different from employing workers to manufacture the televisions. Furthermore, despite the label "temporary worker," there was not much evidence that the warehouse staffing levels related directly to the number of television shipments. The "temporary workers" seem to receive treatment equivalent to that of ordinary warehouse workers, such as vacation bonuses. This is not an indicia of temporary status. Moreover, even if the fixed versus variable distinction is not always appropriate, the court agrees with Commerce that these particular expenses are too unrelated to specific sales to qualify as direct selling expenses.

Accordingly, the remand determination of Commerce is found to be based on substantial evidence and is in accordance with law. Thus, it is sustained.